Mendle Silverman and Cecelia Silverman v. Commissioner.
Silverman v. Commissioner
Docket No. 40835.
United States Tax Court
T.C. Memo 1954-62; 1954 Tax Ct. Memo LEXIS 186; 13 T.C.M. (CCH) 527; T.C.M. (RIA) 54168; June 11, 1954, Filed *186 John A. Ross, Esq., 711 Temple Building, Kansas City, Mo., for the petitioners. David Karsted, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined a deficiency of $2,571.78 in the petitioners' income tax for the year 1949. The only issue presented is the correctness of the respondent's action in determining that a corporate payment of $7,402.80 received by the petitioners was taxable as a dividend under section 115(g) of the Internal Revenue Code. The respondent made one other adjustment which has been conceded by the petitioners. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners are husband and wife and reside in Johnson County, Kansas. They filed a joint income tax return for 1949 with the collector of internal revenue for the sixth district of Missouri at Kansas City, Missouri. On October 18, 1940, Mendle Silverman, sometimes hereinafter referred to as the petitioner, Harry Czarlinsky and Arthur L. Ross formed a corporation under the laws of the State of Missouri called Lee's Dresses, Inc., with an authorized capital *187 stock of 500 shares of no par value common stock. The corporation was organized to engage in the manufacture of ladies' ready-to-wear dresses. All of the corporation's original capital, $10,000, was provided by the petitioner and had been borrowed by him from his mother, Lena Silverman. The original issue of the corporation's capital stock consisted of 100 shares issued as follows: 49 shares to the petitioner, 49 shares to Harry Czarlinsky and 2 shares to Arthur L. Ross. On March 19, 1941, the petitioner and Czarlinsky each paid $3,250 to the corporation and each received 32 1/2 shares of its originally authorized but previously unissued stock. On December 10, 1941, Czarlinsky transferred 32 1/2 shares of stock to his wife, Anne Czarlinsky. On March 31, 1942, a stock dividend of $10,000 was paid by the corporation by issuing to the petitioner and Anne Czarlinsky 50 shares each of its originally authorized but previously unissued stock. A disagreement arose between the petitioner and Czarlinsky and in February 1943 the petitioner purchased all of the stock, totaling 131 1/2 shares, held by Czarlinsky and his wife. The stock certificates representing the shares purchased were canceled *188 and new certificates, one for 2 shares to Diana Silverman, the petitioner's sister-in-law, and one for 129 1/2 shares to the petitioner, were issued. In the summer of 1943 the petitioner expected to be called into the Armed Forces of the United States. He made arrangements with Morris Herdan, who had been in the employ of the corporation since 1942, to manage the business during his absence. One share of stock was transferred from Arthur L. Ross to Herdan for no consideration on June 22, 1943. On July 7, 1943, the petitioner and Herdan entered into an agreement which provided, inter alia, as follows: "(1) Herdan shall have the right and option, exercisable only on the return of Silverman, after being mustered out of the Armed Forces, to purchase [from Silverman] One hundred thirty (130) shares of the outstanding common capital stock of Lee's Dresses, Inc. at the price of One hundred seventy five dollars ($175.00) per share." On September 30, 1943, the petitioner paid into the corporation $7,000 and received 40 shares of the corporation's originally authorized but previously unissued stock. After the issuance of this stock the corporation had 305 shares of stock outstanding. *189 Shortly after the petitioner returned from service in the Armed Forces, Herdan exercised the option given him in 1943 and purchased 152 1/2 shares of stock from the petitioner on May 1, 1946. At that time certificates for all of the outstanding stock were canceled and new certificates were issued as follows: Certificate
No.
Name
No. of Shares
14
Diana Silverman
2
15
Mendle Silverman
150 1/2
16
Morris Herdan
150 1/2
17
Mildred Herdan
2 At the time of his purchase of stock from petitioner, Herdan entered into an agreement with the petitioner which provided, inter alia, as follows: "(b) It is mutually agreed that after the expiration of said three (3) year period, should either party to this agreement desire to dispose of part or all of his shares in Lee's Dresses, Inc. and offers them for sale: "1. The other party shall have the first and exclusive right to purchase all or any number thereof, at their net book value, within one hundred twenty (120) days from date offered. "2. The other party, in lieu of purchasing the shares, or any number of them, may assign all or part of his right to acquire such shares to the corporation and the corporation *190 acting alone or in concert with him may purchase all or part of said shares, at their net book value, either for Treasury Stock or to cancel and retire them. The corporation shall be required to conclude its purchase within the specified one hundred twenty (120) day period. "3. If offeree and/or the corporation fails to purchase the offered shares within the one hundred twenty (120) day period, or, before the expiration thereof they both notify offeror they will not buy, the shares may then be offered by offeror to whomsoever he chooses but a sale may not be consumated [consummated] to such a person unless the other party to this agreement shall first approve of the purchaser." Without receiving any consideration therefor and without capitalizing any surplus with respect thereto, the corporation on July 10, 1946, issued to the petitioner and Herdan 97 1/2 shares each of its originally authorized but previously unissued stock. The certificates of stock issued to the petitioner and Herdan contained the following endorsement: "This certificate of stock is subject to the terms and conditions of a certain agreement between Mendle Silverman and Morris Herdan, dated May 1, 1946, a *191 copy of which is on file with the Secretary of the Company, which terms and conditions are hereby referred to and made a part hereof as fully as though set forth herein in detail." In the spring of 1947 the petitioner desired to move the manufacturing plant to a larger location. Herdan objected to the move and relations between him and petitioner became strained over the matter. Herdan offered to sell his stock to the petitioner. However, he was made president of the corporation and relations between the two again became amicable. The corporation moved to a larger location in November 1947. In October 1948 friction again developed between petitioner and Herdan over management policies. A meeting was held at the home of Milton Silverman, brother of petitioner, and Herdan offered to sell his stock to petitioner or to buy all of petitioner's stock. Neither offer was acceptable to petitioner, and Herdan stated he would consult an attorney about dissolving the corporation so that he could receive his share of the corporate assets. On October 27, 1948, the following agreement was entered into between the parties: "THIS AGREEMENT, made and entered into this 27th day of October, 1948, *192 by and between MENDLE SILVERMAN and MORRIS HERDAN and MILDRED HERDAN, his wife, WITNESSETH: "In consideration of the sum of Twenty-Five Hundred Dollars ($2,500.00) this day deposited by Mendle Silverman with the Commerce Trust Company as escrow agent, and the further consideration of the sum of Forty-Two Thousand Five Hundred Dollars ($42,500.00) to be paid to said escrow agent and the delivery to said escrow agent of the duly endorsed Title Certificate No. 437453 to one 1946 Oldsmobile Four-Door Sedan, Engine No. 8-18488-H, Norris [Morris] Herdan and Mildred Herdan agree and do hereby sell to Mendle Silverman, and Mendle Silverman hereby agrees to buy, Two Hundred Fifty (250) shares of the common capital stock without nominal or par value of Lee's Dresses, Inc., a Missouri corporation. Said certificates being more specifically Certificate No. 16 in the name of Morris Herdan for 150 1/2 shares, Certificate No. 17 in the name of Mildred Herdan for 2 shares, and Certificate No. 18 in the name of Morris Herdan for 97 1/2 shares. Morris Herdan and Mildred Herdan agree that they will deposit with the aforesaid escrow agent said Certificates No. 16, 17 and 18, duly assigned in blank, *193 their duly signed and witnessed resignations as officers and directors of the corporation, effective immediately, and a disclaimer by both of them to any rights or interest in and to a policy of insurance on the life of Morris Herdan carried by the said Lee's Dresses, Inc. "Morris Herdan, having drawn and received compensation from the corporation in full to October 31, 1948, agrees that he shall receive no further compensation hereafter from Lee's Dresses, Inc. and both he and his wife, Mildred Herdan, hereby waive any claim for compensation as officers and directors of Lee's Dresses, Inc., not heretofore paid, or any claim of any nature whatsoever against Lee's Dresses, Inc. or Mendle Silverman heretofore existing, provided Mendle Silverman has complied with the provisions hereof on his part to be performed. "The aforesaid escrow agent is hereby empowered, upon receiving the aforesaid Forty-Two Thousand Five Hundred Dollars $42h,500.00) and the Two Thousand Five Hundred Dollars ($2,500.00) aforesaid, and the Title Certificate to the Oldsmobile Sedan from Mendle Silverman and the Three (3) Stock Certificates for Two Hundred Fifty (250) shares of Lee's Dresses, Inc. common capital *194 stock, duly assigned in blank, and the resignations of Morris Herdan and Mildred Herdan aforementioned and the disclaimer or rights to the policy of insurance, from said Morris Herdan and Mildred Herdan, to deliver the said Forty-Five Thousand Dollars ($45,000.00) and the automobile title certificate to Morris Herdan and Mildred Herdan and to deliver the stock certificates, resignations and insurance policy disclaimer to Mendle Silverman, taking receipts therefor from the respective parties. Thereupon the escrow herein contemplated shall stand completed. "Each of the parties hereto agree that they will perform the various things required to be done hereunder by them on or before October 30, 1948." * * *
The sale of the 250 shares of stock was consummated on October 28, 1948, when petitioner and Herdan signed the following agreement: "THIS AGREEMENT, made and entered into this 28th day of October, 1948, by and between Mendle Silverman, party of the first part, hereinafter called Silverman, and Morris Herdan and Mildred Herdan, his wife, parties of the second part, hereinafter called Herdan, WITNESSETH: "WHEREAS, Herdan is now the owner of 250 shares of the common capital *195 stock without nominal or par value of Lee's Dresses, Inc., a Missouri corporation, represented by Certificates Numbered 16, 17 and 18, respectively, in the amount of 150 1/2 shares, 2 shares and 97 1/2 shares, and "WHEREAS, Herdan desires to sell, and Silverman to buy, said stock, "NOW THEREFORE it is agreed by and between the parties as follows: Herdan hereby sells, transfers, assigns and sets over to Silverman said 250 shares of the capital stock of Lee's Dresses, Inc., numbered as aforesaid, and Silverman agrees to buy said stock, and to pay for the same Forty-Five Thousand Dollars ($45,000.00) in cash and one 1946 Oldsmobile Sedan, Engine Number 8-18488 H, and in further consideration of the purchase of said stock by Silverman, Herdan hereby releases, relinquishes and quitclaims Silverman and Lee's Dresses, Inc. from any and all claims of any kind or character which he now has against the said Silverman or Lee's Dresses, Inc., or may hereafter have against them, arising out of any manner of thing from the commencement of time to this date. "Herdan hereby acknowledges receipt of said Forty-Five Thousand Dollars ($45,000.00) and executed assignment of title certificate to said *196 automobile and the delivery of said automoble to him." * * *
In order to effectuate the sale, the corporation held a special joint meeting of stockholders and directors on October 28, 1948. The minutes of that meeting provided, inter alia: "The Chairman [Mendle Silverman] advised the meeting that he had acquired all of the shares of the corporation heretofore owned by Morris Herdan and Mildred Herdan; that Morris Herdan and Mildred Herdan had resigned as officers and directors of the corporation and that their resignations dated October 28, 1948, effective immediately, were in his hands. Upon motion, second, and vote thereon it was "'RESOLVED that the resignations of Morris Herdan and Mildred Herdan be accepted immediately and the written resignations filed as part of the minutes of this meeting; that the disclaimer of Morris Herdan and Mildred Herdan to any rights or interest in and to a policy of life insurance, its cash surrender value or benefits, carried on the life of Morris Herdan by Lee's Dresses, Inc., more specific policy No. 20,609,841 issued by New York Life Insurance Company, be filed as part of these minutes and the officers of the corporation are hereby *197 instructed to effect the cancellation of said policy; that the restriction placed on transfer of certificates numbered 16, 17 and 18 by virtue of an agreement of May 1, 1946, a copy of which is part of the minutes of the meeting of May 7, 1946 be hereby cancelled and made void.' * * *
"Whereas, in the negotiations to purchase Morris and Mildred Herdan's shares, it was necessary to transfer to Morris Herdan one 1946 Oldsmobile Sedan, engine # 8-18488 H, the sale of the said automobile to Mendle Silverman at its depreciated book value was thereby approved." * * *
At the time of the petitioner's purchase of the foregoing stock the corporation's credit status was not sufficient to enable it to raise $45,000 in order to purchase that stock. The petitioner raised the $45,000 by selling some Government bonds he owned personally, withdrawing money from his personal bank acount, borrowing $25,000 from a bank and borrowing from his brother. Petitioner and his brother were co-signers of the note given for the bank loan and, as collateral, petitioner pledged his shares of stock in the corporation. On the date of the consummation of the sale, October 28, 1948, the certificates *198 representing stock owned by Herdan and his wife were cancelled and new certificates were issued to petitioner and his wife. Herdan and his wife also surrendered any interest he might have in an insurance policy on his life then held by the corporation, and the policy subsequently was canceled. In June 1949, the petitioner was pressed by the bank for a payment on the $25,000 loan. The minutes of a meeting of the corporation's stockholders on June 30, 1949, show, inter alia, the following: "The Chairman [Mendle Silverman] advised the meeting that he had, on October 28, 1948 purchased all of the two hundred fifty (250) shares of stock of Morris and Mildred Herdan for a consideration of $46,266.43 or $185.07 per share. He further advised the meeting that, if the shareholders so desired, he would sell to the corporation, at his cost, to be retired, as many of said two hundred fifty (250) shares as the corporation desired to purchase at this time. "Upon consideration, motion, second and vote it was "'RESOLVED that the corporation purchase from Mendle Silverman forty (40) shares of the common capital stock of the corporation at $185.07 per share, or a total sum of $7,402.80 and *199 that said forty (40) shares be retired and cancelled upon the corporation's books.'" The minutes of the directors' meeting of June 30, 1949, contain the following: "The chairman [Mendle Silverman] then instructed the officers to conclude the purchase of the shares of stock from Mendle Silverman which purchase was approved at the shareholders' meeting." * * *
Payment for the 40 shares of stock was made by the corporation in July 1949 and the amount thereof was used by petitioner to pay off part of the bank loan. The book entry reflecting this distribution was a debit to undivided profits and a credit to cash. No certificate of stock was surrendered to the corporation by Silverman following the above distribution. An adjusting entry for the fiscal year ending May 31, 1950, was made on the books of Lee's Dresses, Inc., reducing capital stock by $2,680, i.e., the book value of 40 shares of stock. Prior to the foregoing transaction Lee's Dresses, Inc., had declared and paid one dividend, namely, the stock dividend in 1942. The earned surplus of the corporation at the end of each of the fiscal years ended May 31, 1948, May 31, 1949, and May 31, 1950, was $65,540.26, $69,894.45 *200 and $56,552.02, respectively. The balance sheets of the corporation do not list any liabilities owing to the petitioner during 1949 or 1950. There was no liquidation, or partial liquidation, of Lee's Dresses, Inc., during 1949. The payment of $7,402.80 to petitioner was made at such time and in such manner as to make the distribution essentially equivalent to the distribution of a taxable dividend. Opinion The only issue presented is whether the respondent erred in determining that the transaction by which the corporation purchased 40 shares of its stock from the petitioner and paid him $7,402.80 therefor was essentially equivalent to the distribution by it of a taxable dividend to the petitioner within the purview of section 115(g) of the Internal Revenue Code. [1]
*201 The petitioner takes the position that the respondent's action was erroneous. In support of his position he contends that when in October 1948 he purchased from the Herdans their 250 shares of stock in the corporation he was acting as agent for the corporation which did not have sufficient funds for the purpose. He also urges that his purchase of the stock was only a temporary expedient employed by the corporation to enable it to accumulate sufficient funds to acquire the stock. He further contends that since the amount of $7,402.80 received by him in 1949 from the corporation for 40 shares of the stock exactly equalled the amount he paid for such shares he realized no gain on those shares. In connection with his purchase of the stock from the Herdans the petitioner conferred with Arthur L. Ross, the corporation's accountant, who was also an attorney. Ross prepared the instrument of October 27, 1948, and executed by the petitioner and the Herdans respecting the sale by the latter of their stock to petitioner. He also prepared the minutes of the special meeting of the stockholders of the corporation held on October 28, 1948, as well as the minutes of the meetings of the corporation's *202 stockholders and directors held on June 30, 1949. Although there is some testimony by Ross and by petitioner to the effect that petitioner was acting for the corporation in purchasing the stock from the Herdans, we are unable to accept such testimony as conclusive that the petitioner so acted. The record fails to disclose any authorization by the corporation to petitioner to acquire the stock on its behalf or any ratification of his action in event he acted prior to formal authorization. Further, the record shows that the books of the corporation did not reflect any liability, fixed or contingent, on the part of the corporation to petitioner respecting his purchase of the stock. Furthermore, so far as appears, the only portion of the 250 shares acquired from the Herdans that petitioner ever sold to the corporation were the 40 shares here in question. Morris Herdan appeared as a witness in the proceeding. He testified that he was president and a director of the corporation throughout 1948 until October 28 of that year, when he sold his stock and resigned, and that at none of the meetings of the directors, held while he was a director, was the matter of the corporation buying his stock *203 ever discussed. He further stated that he never offered to sell his stock to the corporation and that when he received payment for the stock he did not know whether petitioner had purchased it for himself or for the corporation. The agreements relating to the sale of the stock were between petitioner and the Herdans. Those agreements contain nothing to indicate that petitioner was acting for the corporation. Likewise, the minutes of the special meeting of the corporation's stockholders on October 28, 1948, fail to indicate that petitioner's purchase of the stock had been for the corporation. Nothing in the minutes of the meeting of the corporation's stockholders held on June 30, 1949, indicate that petitioner had purchased the stock of the Herdans for or on behalf of the corporation. On the contrary, the minutes of that meeting recite that petitioner "advised the meeting that he had, on October 28, 1948 purchased * * * the two hundred fifty (250) shares of stock of Morris and Mildred Herdan * * * [and] that if the shareholders so desired, he would sell to the corporation * * * as many of said * * * shares as the corporation desired to purchase at this time." The petitioner makes *204 no attempt to reconcile the foregoing proposal of sale as owner with his present contention that he had purchased the stock from the Herdans as agent for the corporation. Obviously, such a proposal can not be reconciled with petitioner's contention. From a consideration of the foregoing, we find that the petitioner was acting for himself in 1948 in purchasing stock from the Herdans, and that in 1949 in selling stock to the corporatiob he was selling stock which he had originally acquired for himself and not for the corporation. The purchase by the corporation of stock from the petitioner and petitioner's purchase of stock from the Herdans were two separate and unrelated transactions. Lowenthal v. Commissioner, 169 Fed. (2d) 694. Fox v. Harrison, 145 Fed. (2d) 521, relied on by petitioner, does not aid him. In that case it was shown that the taxpayer, in acquiring stock later transferred to the corporation, was acting for the corporation when he acquired the stock. No such showing has been made here. In our opinion, the respondent's action was correct and, therefore, must be sustained. Decision will be entered for the respondent. Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(g) Redemption of Stock. - (1) In General. - If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. * * *↩